UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT LEE WILLIFORD,                    )
                                         )
                        Petitioner,      )      15 C 2664
                                         )
            vs.                          )      Judge Gary Feinerman
                                         )
TIM CHRISTIANSON, Acting Chief of Parole, )
                                         )
                        Respondent.      )

## M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>

Petitioner Robert Lee Williford, who is on supervised release after serving more than a

decade in state prison for armed robbery and aggravated battery, petitions for a writ of habeas

corpus under 28 U.S.C. § 2254. Doc. 6. Williford seeks habeas relief on the grounds that his

trial, appellate, and post-conviction attorneys were constitutionally ineffective, that he was not

provided with a preliminary hearing, that he is actually innocent, that the prosecutor relied on

excluded evidence during closing arguments, and that his sentence is excessive. Williford's

petition is denied, and the court will not issue a certificate of appealability.

### Background

A federal habeas court presumes that the state courts' factual findings are correct unless

they are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v.

Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only

if it ignores the clear and convincing weight of the evidence.") (internal quotation marks

omitted); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("We give great deference to

state court factual findings. After AEDPA, we are required to presume a state court's account of

the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by

clear and convincing evidence.") (internal quotation marks omitted).  The Appellate Court of

Illinois is the last state court to have adjudicated Williford's case on the merits.  *People v.*

*Williford*, 2014 IL App (1st) 133737-U (Ill. App. Sept. 15, 2014) (reproduced at Doc. 13-10);

*People v. Williford*, 2011 WL 9686255 (Ill. App. Jan. 4, 2011) (reproduced at Doc. 13-14);

*People v. Williford*, No. 1-05-2071 (Ill. App. Jan. 21, 2009) (reproduced at Doc. 13-1); *People v.*

*Williford*, No. 1-05-2071 (Ill. App. May 14, 2008) (reproduced at Doc. 13-5 at 11-22).  The

following sets forth the facts as that court described them, as well as the procedural background

of the state criminal and post-conviction proceedings.

### A.    Factual Background

On July 15, 2003, four men attacked Jacquelynn Popp and Michael Hurst while they were

walking home from dinner.  Doc. 13-1 at 2.  Two of the men choked Popp and threw her to the

ground before taking her phone and wallet from her pockets.  *Id*. at 2-3.  The other two men

focused on Hurst; they hit him in the neck with a three-foot-long lead pipe, knocking him down,

and then stole his keys, cigarettes, and watch.  *Id*. at 2; Doc. 13-22 at 56, 61-62.  The men then

ran to a dark SUV parked nearby.  Doc. 13-1 at 3.

Popp flagged down a police car and pointed to the SUV as it began to drive away.  *Ibid*.

The police took off after the SUV and the SUV fled, setting in motion a chase that reached

speeds of up to 80 miles per hour and drew in several other police cars.  *Id*. at 3, 9.  In the middle

of the chase, a man jumped out of the SUV and ran away.  *Id*. at 3.  A few minutes later, the

SUV crashed into a pole.  *Ibid*.  Williford stepped out of the driver's seat, and two other men—

Rico Ardister and Anthony Brochs—stepped out of the passenger seats.  Doc. 13-22 at 120-23.

(The record contains inconsistent spellings of Brochs's name.  *E.g.*, Doc. 13-22 ("Brocks").  This

court will use the state appellate court's spelling: "Brochs.")  All three men were detained.  Doc.

13-1 at 3. A police officer retrieved a set of keys from Williford's pocket, and Hurst later identified them as his. Doc. 13-22 at 74-75, 127, 130.

Popp and Hurst waited out the chase at a grocery store near where they were attacked. Doc. 13-1 at 3. The police brought Williford, Ardister, and Brochs to the store, and Popp and Hurst identified them as their attackers. *Ibid*.

### B. Trial

Williford, Ardister, and Brochs were each charged with two counts of armed robbery under 720 ILCS 5/18-2(A)(1) and one count of aggravated battery under 720 ILCS 5/12-4(B)(1). Doc. 13-20 at 16-18. Ardister and Brochs pled guilty and received ten-year sentences. Doc. 13-1 at 8-9. The prosecutors offered Williford the same deal—a ten-year sentence in exchange for a guilty plea—but he went to trial instead. Doc. 13-23 at 7-8.

At trial, Popp testified that four men attacked her and Hurst and that Williford was one of the attackers. Doc. 13-22 at 18-19. Williford's lawyer did not object to the testimony. *Ibid*. Popp admitted on cross-examination that she had drunk two beers at dinner and that the street where she was robbed was dimly lit. *Id*. at 39-40. After Popp's testimony and outside the presence of the jury, Williford's attorney told the judge that Popp and Hurst had spoken in the hallway outside the courtroom. *Id*. at 50. Williford's lawyer noted that it would "[o]bviously … be a violation" of the court's exclusion order if Popp and Hurst had discussed Popp's testimony, and said, "I don't know how the Court handles that." *Ibid*. The judge responded:

> Real simple. If she violated the motion to exclude and discussed her testimony with the next witness, then I'll order the jury to strike her testimony, just completely disregard it as if she never existed, in violation of that exclusion order.

*Id*. at 50-51.

Hurst's testimony came next. *Id*. at 52. Like Popp, Hurst testified that he was attacked by four men and that Williford was one of them, and that they stole his keys, cigarettes, and watch. Doc. 13-22 at 55, 60-61. Hurst also testified that he went to the hospital after the police chase and then went to the police station to give a statement; when he was done, the police gave him his keys and cigarettes. *Id*. at 74-75. On cross-examination, he admitted to drinking "one or two" beers at dinner. *Id*. at 77. Williford's lawyer asked Hurst whether he had a "specific, independent recollection of seeing [Williford] during the course of the attack," and Hurst refused to answer, even after the judge ordered him to. *Id*. at 78-79. Williford's lawyer also questioned Hurst about his conversation with Popp outside the courtroom. *Id*. at 79. Hurst admitted to speaking with Popp but denied discussing her testimony. *Id*. at 79-80. Williford did not move to strike Popp's testimony, and the judge did not order her testimony stricken. *Id*. at 80.

A police officer, Brian Costanzo, testified after Hurst. *Ibid*. Costanzo testified that he was in the car that Popp flagged down after the robbery. Doc. 13-22 at 84. He further testified that he heard Popp screaming and saw four men running to a dark SUV, and he identified Williford as one of the men. *Id*. at 84-85. Costanzo and his partner chased after the SUV, and other police cars joined the chase in response to Costanzo's call for help over the radio. *Id*. at 89. Costanzo testified that the SUV was traveling at least 50 miles per hour and that it did not stop for any stop signs or red lights. *Id*. at 91. He also testified that a man jumped out of the car during the chase. *Id*. at 92.

A second police officer, Vidas Nemickas, testified next. *Id*. at 106. Nemickas, a member of the 14th District gang team, joined the chase of the SUV. *Id*. at 107, 113. He testified that "about fifteen" police cars eventually joined the chase as well, *id*. at 114, that the SUV reached speeds of eighty miles an hour, *id*. at 116, that a man jumped out of the car as it turned into a

housing complex, *id.* at 117, and that the chase came to an end when the SUV ran into a light pole, *id.* at 118.  Three men, including Williford, got out of the car; Williford had been in the driver's seat.  *Id.* at 122-23.  Nemickas detained the men and searched them.  *Id.* at 125.  He found a cell phone in Brochs's pocket, a wallet in Ardister's pocket, and a set of keys in Williford's pocket.  *Id.* at 125-27.  Popp later identified the wallet and cell phone as hers, and Hurst identified the keys as his.  *Id.* at 130.

After Nemickas came Craig Turton, an employee of the Illinois Secretary of State, who testified that the SUV that Williford drove into a light pole was registered to Williford.  *Id.* at 137-38, 143.  The State's last witness was Assistant State's Attorney Barbara Dawkins.  *Id.* at 144.  She testified that when she interviewed Williford after his arrest, he told her that a friend of his named "Mookie" had asked him if he wanted to commit a "lick"—slang for a robbery—and that he had agreed, but that he never got out of the car while the robbery was happening.  *Id.* at 151-52.

The jury found Williford guilty of all three counts.  *Id.* at 242.  At the sentencing hearing, the prosecutor argued for a long sentence on several grounds: Williford (or one of his accomplices) had hit Hurst around the head with a lead pipe, which could have killed him, Doc. 13-23 at 6; Williford had two prior felony convictions for possession of a controlled substance and for selling a firearm without observing the required 72-hour waiting period, *id.* at 5; he was on conditional discharge for another offense when he committed the robbery, *ibid.*; he had a stable childhood and family life, *id.* at 5-6; and he fled from the police, triggering a dangerous high-speed chase, *id.* at 7.  The prosecutor also noted that Williford "was given an opportunity to take responsibility for this instance and was offered by this court ten years … on a plea of guilty and he did not take responsibility during that [settlement] conference."  *Id.* at 7-8.  Williford's

lawyer objected, and the court responded, "I'm not considering that at all. … I don't even want a reference to that." *Id*. at 8. The prosecutor apologized and withdrew the remark. *Ibid*.

Williford's lawyer argued for a more lenient sentence on the grounds that Williford was a veteran of the U.S. Army, *id*. at 11; that he was married and had three children, including one under the age of 18, and that he would not be able to support his family from prison, *id*. at 11-12; and that there was no evidence that he was the person who hit Hurst with the pipe, *id*. at 12. Then Williford, addressing the court personally, argued that he was innocent. *Id*. at 13-14.

The trial judge spoke next. He first noted that the jury found Williford accountable for the acts of his co-defendants, including choking Popp and bludgeoning Hurst, and remarked that it was "[m]iraculous[]" that Hurst's "head wasn't crushed in when he was hit over the back of the head with a pipe." *Id*. at 14-15. Then the judge discussed Williford's decision to flee the police:

> And then engaging in something out of the Bullet or the French Connection. High speed chase over I don't know, 20, 30 blocks of the City of Chicago with police cars in pursuit. People flying out of your vehicle, diving out of the vehicle as it's moving through the streets resulting in you ultimately crashing the vehicle. I can't remember what the speed estimate was, but I think it was 80 miles an hour or something like that down Western Avenue. Causing near danger to countless people during that high speed chase.

*Ibid*. The judge then listed various statutory aggravating and mitigating factors, and explained why they did or did not apply. *Id*. at 16-20. He found that only one mitigating factor applied: that Williford's imprisonment "would entail excessive hardship to his dependents." *Id*. at 16-19. He found that five statutory aggravating factors applied: Williford's "conduct … cause[d] or threaten[ed] serious harm"; he "received compensation for committing the offense"; he "ha[d] a history of prior delinquency, criminal activity"; he "was on a period of conditional discharge when this [crime] was committed"; and his "sentence [was] necessary to de[t]er others from committing the same crime." *Id*. at 19-20. The judge then sentenced Williford to 25 years'

imprisonment for each of the armed robbery counts and 5 years' imprisonment for the aggravated battery count, all to run concurrently. *Id*. at 20. He gave Williford credit for 695 days of pretrial detention, and imposed $499 in costs, which included a $20 assessment for the Violent Crime Victim Assistance Fund ("VCVA"). *Id*. at 21; Doc. 13-1 at 2 n.1.

Williford later moved for the court to reconsider the sentence. Doc. 13-25 at 5. The judge denied the motion, stating:

> [T]he defendant and three other individuals basically drive up from their neighborhood into Wicker Park looking for opportunities to rob, set up some kind of ambush which they do. These two people that are coming back from dinner get ambushed by Williford and the other three individual[s], one of the victims gets cracked over the head with a pipe, struck by one of the co-offenders and after being relieved of their personal property, Williford then engages in a high speed chase trying to outrun the police down Western Avenue at speeds up to 80 miles per hour, I believe was the testimony, causing one of the most dangerous types of situations that you could ever imagine. The sentence was appropriate. Motion to reconsider sentence denied.

*Id*. at 6-7.

### C. Direct Appeal and Post-Conviction Review

Williford appealed his sentence, arguing that: (1) the trial court abused its discretion by imposing a 25-year sentence for the armed robbery convictions; (2) he should have been credited with an additional two days of pre-sentence detention; and (3) his $20 VCVA fine should be vacated. Doc. l3-2. The Appellate Court of Illinois affirmed. *People v. Williford*, No. 1-05-2071 (Ill. App. May 14, 2008) (reproduced at Doc. 13-5 at 11-22). Williford's attorneys filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois, arguing that the fine was improper. Doc. 13-5. Williford also filed a *pro se* supplemental PLA arguing that his prison term was excessive. Doc. 13-6. The state supreme court denied the PLAs but issued a supervisory order vacating the appellate court's ruling and instructing that court to reconsider its decision about the fine. *People v. Williford*, 895 N.E.2d 2 (Ill. 2008) (reproduced at Doc. 13-7).

On remand, the state appellate court vacated the $20 VCVA assessment and credited Williford with an additional two days of pretrial detention, but otherwise left his sentence intact. *People v. Williford*, No. 1-05-2071 (Ill. App. Jan. 21, 2009) (reproduced at Doc. 13-1). Williford filed another PLA, arguing that the supervisory order prohibited the appellate court from reaffirming his sentence of imprisonment. Doc. 13-8. After the PLA was denied, *People v. Williford*, 231 Ill.2d 686 (Ill. 2009) (reproduced at Doc. 13-9), Williford filed a petition for a writ of certiorari with the United States Supreme Court, but that petition was denied as well. *Williford v. Illinois*, 557 U.S. 940 (2009).

Williford began launching collateral attacks against his convictions and sentence while his direct appeal was still unwinding. He filed a petition for a writ of mandamus with the state trial court in 2006, arguing that his term of mandatory supervised release would violate Illinois law and the federal Constitution. Doc. 13-27 at 30-36. The trial court denied the petition. *People v. Williford*, No. 03-CR-16413-03 (Cir. Ct. Cook Cnty. May 3, 2006) (reproduced at Doc. 13-27 at 37-41). Williford then filed a *pro se* post-conviction petition in state trial court pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*., arguing that his trial attorney was ineffective under the Sixth Amendment for failing to move to suppress testimony identifying him as one of the robbers. Doc. 13-27 at 56-60. He was assigned a public defender after filing the petition, but the public defender did not amend the petition or file supplemental claims. *Id*. at 61. The state trial court dismissed the petition. *People v. Williford*, No. 03-CR-16413-03 (Cir. Ct. Cook Cnty. Feb. 25, 2009) (reproduced at Doc. 13-27 at 69-70).

Williford appealed the dismissal, arguing that his post-conviction lawyer had been ineffective for failing to amend his petition to add an argument that the lawyers representing him on direct appeal had been ineffective. Doc. 13-11. The state appellate court reversed and

remanded. *People v. Williford*, 2011 WL 9686255 (Ill. App. Jan. 4, 2011) (reproduced at Doc.

13-14. On remand, Williford argued that the lawyers representing him both at trial and on direct

appeal had been ineffective. Doc. 13-28 at 28-42. The trial court again dismissed the petition.

Doc. 13-30 at 29. Williford again appealed, but his appointed attorneys moved to withdraw

under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), arguing that Williford had no colorable

argument that he was entitled to post-conviction relief. Doc. 13-15. Williford filed a *pro se*

response to the *Finley* brief, arguing that he must have good arguments on appeal given that his

earlier appeal was successful. Doc. 13-16. The appellate court sided with Williford's lawyers

and dismissed his appeal. *People v. Williford*, 2014 IL App (1st) 133737-U (Ill. App. Sept. 15,

2014) (reproduced at Doc. 13-10). Williford filed yet another PLA, arguing that he was innocent

and that his sentence was excessive. Doc. 13-17. The state supreme court denied this last PLA

as well. *People v. Williford*, 23 N.E.3d 1206 (Ill. 2015) (reproduced at Doc. 13-18).

Williford timely filed the present federal habeas petition on March 26, 2015. Doc. 1. At

that time, Williford was imprisoned at the Taylorville Correctional Center, and the petition

named Darryl Edwards, Taylorville's warden, as the respondent. *Id*. at 1; Doc. 3 at 1; *see* Doc. 5

(ordering "Darryl Edwards" to be substituted for "Taylorville Correctional Center" as

Respondent). On January 4, 2016, the court received notice that Williford had been released

from prison and was serving a term of mandatory supervised release. Doc. 22. The court

accordingly amended the case caption to name Tim Christianson, Illinois's Acting Chief of

Parole, as the respondent. Doc. 24; *see Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir.

2005) ("A federal habeas corpus action … must name as the respondent the state officer who has

custody of the petitioner.") (internal quotation marks omitted).

**Discussion**

Williford's habeas petition asserts six grounds for relief: (1) that his trial, appellate, and post-conviction lawyers were constitutionally ineffective; (2) that he never received a preliminary hearing, in violation of the Fourteenth Amendment's Due Process Clause; (3) that he is innocent; (4) that the prosecutor relied on stricken testimony in her closing argument, in violation of the Fourteenth Amendment's Due Process Clause; (5) that he was convicted on the basis of insufficient evidence; and (6) that his sentence was excessive. Doc. 6. The first, second, fourth, and fifth claims, and part of the sixth claim, are procedurally defaulted, and the remaining claims fail on the merits.

## I.    Jurisdiction

Although neither party disputes the court's jurisdiction to hear the petition, the topic bears some discussion at the outset. *See Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 693 (7th Cir. 2003) ("[I]nquiring whether the court has jurisdiction is a federal judge's first duty in every case."). In March 2015, when Williford filed his federal habeas petition, he was incarcerated in state prison. Doc. 1-1 at 1; Doc. 6 at 1. As noted, he since was released and has started a term of mandatory supervised release. Doc. 22 at 1.

This creates two potential obstacles to jurisdiction. The first arises under 28 U.S.C. § 2241(c), which provides that a "writ of habeas corpus shall not extend to a prisoner unless":

> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

(5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(c). The only provision that plausibly applies to Williford is subparagraph (3), which requires a petitioner to be "in custody."

Section 2241(c)(3)'s custody requirement is jurisdictional; it must be satisfied for a court to rule on a petition for a writ of habeas corpus, and the Chief of Parole cannot waive or forfeit it. *See Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam); *Stanbridge v. Scott*, 791 F.3d 715, 718 (7th Cir. 2015). "Custody" is not synonymous with "prison"—any person whose liberty is significantly restricted as a direct consequence of a conviction satisfies the requirement. *See Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963) (holding that a person on parole satisfied the custody requirement). But persons who have had their liberty restricted as a *collateral* consequence of a conviction are not in custody for the purposes of § 2241(c), and "a consequence is collateral 'if it is not included in the court's judgment,' no matter whether the consequence 'is imposed on a person automatically upon conviction.'" *Stanbridge*, 791 F.3d at 719 (holding that a person who had been civilly committed as a sexually violent person could not use a habeas petition to challenge his earlier conviction of a sexual offense).

Williford's judgment does not list a term of supervised release as a part of his sentence. Doc. 13-20 at 113-15. Instead, it appears that the supervised release was imposed by operation of a statute, 720 ILCS § 5/5-8-1(d). *See Poole v. Gaetz*, 2013 WL 1679389, at *1 (N.D. Ill. Apr. 16, 2013) (describing an older version of 720 ILCS § 5/5-8-1(d)). Is Williford's situation meaningfully different from that of a person forced by statute to register as a sex offender or to be detained pending deportation, neither of whom is in "custody" for the purpose of § 2241? *See*

*Stanbridge*, 791 F.3d at 719 ("Collateral consequences, even those that impose a significant restraint on one's freedom of movement, such as being placed in federal detention awaiting deportation, do not render a petitioner 'in custody.'"); *Virsnieks v. Smith*, 521 F.3d 707, 718 (7th Cir. 2008) ("[C]ourts have rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas.").

The timing of Williford's petition eliminates the need to answer that question. What matters for § 2241(c) is whether the petitioner is in custody when he files the petition, rather than when the court rules on it. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("Spencer was incarcerated … at the time the petition was filed, which is all the [related] 'in custody' provision of 28 U.S.C. § 2254 requires."); *Maleng*, 490 U.S. at 490-91 ("We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."); *Carafas v. LaVallee*, 391 U.S. 234, 238-40 (1968) (holding that the petitioner satisfied the custody requirement because he was imprisoned when he filed the petition, even though he had been released while the petition was pending); *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 673 (7th Cir. 2003) (acknowledging that "the 'in-custody' requirement is determined at the time of the filing of the petition"). Williford was imprisoned when he filed his petition, so § 2241(c)(3)'s custody requirement is satisfied.

Mootness is a second potential obstacle to jurisdiction. Federal court judgments must affect real legal entitlements; if the conflict giving rise to a federal lawsuit disappears while the suit is pending, the suit becomes moot and the court loses jurisdiction over it. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015). So, if a habeas petitioner is released while his petition is pending, the petition becomes moot unless its success will enable the petitioner to avoid some other consequence of his conviction. *See Diaz v. Duckworth*, 143 F.3d 345, 347 (7th

Cir. 1998) (holding that a habeas petition challenging a prison disciplinary sanction became moot when the petitioner was deported). But "a parolee's[] challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the … restriction imposed by the terms of the parole[] constitutes a concrete injury, caused by the conviction and redressable by the invalidation of the conviction." *Spencer*, 523 U.S. at 7. Because Williford is on mandatory supervised release, which for present purposes is the functional equivalent of parole, his petition is not moot, and the court has jurisdiction.

## II.     Procedurally Defaulted Claims

A federal habeas claim is "procedurally defaulted when a petitioner fails to 'fairly present' his claim to the state courts." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). "To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Ibid.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). That means that the petitioner, on either direct or post-conviction review, must have "present[ed] the contention to each level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012). Accordingly, "[a] procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted). In Illinois, that specifically requires presenting the claim to the Supreme Court of Illinois. *See Boerckel*, 526 U.S. at 845-46.

To fairly present a federal claim, a petitioner must supply the state court with "both the operative facts and the 'controlling legal principles'" underlying the claim, *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)), and

must alert the state court to the claim's "federal nature." *Baldwin v. Reese*, 541 U.S. 29, 30-31 (2004). Fair presentment "does not require a hypertechnical congruence between the claims made in federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006). Four factors govern whether a federal petitioner fairly presented his claim in state court: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001); *see also Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010); *White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009); *Anderson*, 471 F.3d at 815.

The Chief of Parole argues that Williford procedurally defaulted all of his claims except for the third. Doc. 12 at 8. That is mostly correct. Williford procedurally defaulted all of his claims except for the third and part of the sixth.

The second and fourth claims—respectively, that Williford never received a preliminary hearing, and that the prosecutor relied on stricken testimony in her closing statement—are easy. Williford never presented either of them to any state court in any form. Doc. 13-2 (opening direct appeal brief); Doc. 13-4 (direct appeal reply brief); Doc. 13-5 (first PLA); Doc. 13-6 (supplemental PLA); Doc. 13-8 (second PLA); Doc. 13-27 at 30-36 (mandamus petition); Doc. 13-27 at 56-60 (first petition for post-conviction relief); Doc. 13-11 (opening brief in first appeal from the denial of post-conviction relief); Doc. 13-13 (reply brief in first appeal from the denial of post-conviction relief); Doc. 13-28 at 28-42 (second petition for post-conviction relief); Doc.

13-15 (*Finley* motion); Doc. 13-16 (response to *Finley* motion); Doc. 13-17 (third PLA). Those claims are therefore procedurally defaulted. *See Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005) (holding that the petitioner procedurally defaulted a Confrontation Clause claim because he never made the claim in any state proceeding); *Perruquet v. Briley*, 390 F.3d 505, 518 (7th Cir. 2004) (holding that the petitioner procedurally defaulted a due process claim because he had "failed to raise [the] claim at any level of state-court review").

The first habeas claim, for ineffective assistance of counsel, is only slightly more complicated. Williford claims that his lawyers at every stage of the proceedings—trial, appellate, and post-conviction—"failed to raise the legal aspect[s] of the case" and therefore provided ineffective assistance in violation of the Sixth Amendment. Doc. 6 at 6; *see Strickland v. Washington*, 466 U.S. 668 (1984). That mirrors an argument he made in his state post-conviction petition, which asserted that his trial lawyer rendered constitutionally ineffective assistance by failing to move to suppress Popp and Hurst's identification testimony. Doc. 13-27 at 59. But Williford did not repeat that argument in his briefs appealing from the denial of post-conviction relief; instead, he argued that the lawyer who helped prepare his *post-conviction* petition had provided ineffective assistance by failing to amend the petition to include a claim that his *initial appellate* lawyer had provided ineffective assistance. Doc. 13-11 at 14-17; Doc. 13-13. That is not enough to fairly present claims of ineffective assistance of trial or appellate counsel, *see Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (holding that an ineffective assistance of trial counsel claim was not fairly presented where, on appeal from the denial of post-conviction relief, the petitioner argued only that he was deprived of the effective assistance of post-conviction counsel), and a claim is procedurally defaulted unless the petitioner fairly presented it at every level of the state judiciary. *See Mulero v. Thompson*, 668 F.3d 529,

536 (7th Cir. 2012) (finding procedural default where the petitioner raised a claim in the state post-conviction trial court but not in the post-conviction appellate court); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003) (per curiam) (finding procedural default where the petitioner "raised the ex post facto claim in his state habeas corpus petition in the circuit court, but abandoned it in his appeal to the appellate and supreme courts"); *Howard*, 185 F.3d at 725 ("Howard presented his current claim to the state trial court, but by changing the basis of his argument between the trial court and the appellate court, Howard did not fairly present the question of ineffective assistance of trial counsel to the Illinois Appellate Court. Accordingly, he has procedurally defaulted that claim.").

Williford's ineffective assistance of post-conviction counsel claim is also procedurally defaulted. Williford did assert in his post-conviction PLA that he received defective assistance from his attorneys, including his post-conviction attorneys. Doc. 13-17 at 5 ("The Appellate Court Justices … concurred in the judg[]ment based on the brief submitted by Steven Becker Appellate Attorney (Post Conviction) where Mr. Becker prove[d] that prior PC attorn[ey]s, appellate counsel, and trial counsels [were] ineffective. Violation of Amendment # 6 … of the United States Constitution."); *id*. at 7 ("Argument … Under the United States Constitution … # VI … Ineffective Counselor"); *ibid*. ("In the context of trials, the Supreme Court has long established that defendants were entitled to new trials if they could show that incompetent work by their lawyers probably/did affect[] the outcome."); *id*. at 8 ("I … pray[] that this Honorable Court will reduce my sentence, order me release[d] from multiple violation[s] of my constitution[al] rights as well as my attorn[eys] at every level of legal proceedings trial, appeal, post-conviction …."). But providing a state court with the legal basis of a federal claim is only half of what fair presentment requires; the petitioner must also supply the "operative facts"

underlying the claim. *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996); *see also Verdin*, 972 F.2d at 1474 ("[F]or a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court.") (internal quotation marks omitted). The PLA says that Williford's post-conviction lawyers were ineffective, but it does not explain why. Such "passing reference[s]" to a constitutional issue are not enough to satisfy the fair presentment test. *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001). Williford's ineffective assistance of post-conviction counsel claim is therefore procedurally defaulted. (The claim also fails, as the Chief of Parole points out, because challenges to the effectiveness of post-conviction counsel are not cognizable on habeas review. *See* 28 U.S.C. § 2254(i); *London v. Clements*, 600 F. App'x 462, 466 (7th Cir. 2015) ("[Section] 2254 bars relief on the basis of poor performance by counsel in 'postconviction proceedings.'").)

Williford's fifth habeas claim—that the jury convicted him on the basis of legally insufficient evidence—is procedurally defaulted as well. Williford hinted at an insufficient evidence claim in his post-conviction PLA. Doc. 13-17 at 5 ("As well as identity was never proven."); *ibid*. ("I am inncocen[t] (identity never proven) …."). But he did not raise the claim before the post-conviction trial court. Doc. 13-27 at 56-60; Doc. 13-28 at 28-42. And he raised the issue only in passing before the post-conviction appellate court. Doc. 13-16 at 2 ("Identity it was never prov[en]"). Again, a petitioner must fairly present his federal claim before each level of the state judiciary in order to avoid default, and Williford has failed to do so. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that raising a claim for the first time before a state's highest court "does not … constitute 'fair presentation'"); *Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004) ("[A]n appellant does not fully and fairly present a federal claim to the state

courts when he raises that claim for the first time … in a petition asking the state supreme court to grant him leave to appeal.").

Williford's sixth habeas claim—that his sentence was unconstitutionally excessive—is only partially defaulted. The Chief of Parole argues that the claim is procedurally defaulted because, although Williford argued to each level of the Illinois judiciary that his sentence was excessive, he "cited only the state constitution, state statutes, and state cases," and accordingly never alerted the state courts to the "federal nature" of his claim. Doc. 12 at 9-10. But there are two ways to read Williford's excessive sentence claim. The first interpretation is that the sentence was cruel and unusual in violation of the Eighth Amendment to the United States Constitution. The Chief of Parole is correct that Williford never presented that claim to the Illinois courts. He argued at length in state court that his sentence violated Article I, Section 11 of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship," but he cited the Eighth Amendment only once, in passing, in his post-conviction PLA. Doc. 13-2 at 12-17 (arguing that his sentence violated the Illinois Constitution); Doc. 13-17 at 7 ("Under the United States Constitution … #VIII Excessive bail shall not be required …."). So, insofar as Williford is asserting now that his sentence is cruel and unusual under the Eighth Amendment, his claim is procedurally defaulted. *See Lewis*, 390 F.3d at 1031.

The second interpretation of Williford's excessive sentence claim, though, is that the sentence violates the *Sixth* Amendment because the trial judge imposed it with the intent to punish Williford for exercising his constitutional right to a jury trial. Doc. 6 at 7 ("I the defendant was sentence[d] harshly for electing to exercise [my] constitutional rights by going to

trial."). Williford did fairly present a Sixth Amendment sentencing claim to the state courts. In his opening brief to the state appellate court on direct appeal, he argued:

> [A]lthough Williford was offered the same plea bargain that Ardister and Brocks were offered, he chose to exercise his 6th Amendment right to a jury trial and was subsequently found guilty and received a sentence two-and-a-half time[s] longer than Ardister and Brocks. It is established though that a defendant should not be punished more harshly simply for rejecting a plea offer and exercising his right to go to trial. *See generally*, *People v. Scott*, [628 N.E.2d 456, 464 (Ill. App. 1993)] ("While it is not proper for the reviewing court to substitute its own judgment for that of the trial court absent an abuse of discretion, such an abuse would be found if it were to be shown that the enhanced sentence was in retaliation for rejecting a plea offer.").

Doc. 13-2 at 16-17. In the cited case, *People v. Scott*, the defendant was sentenced to thirty years' imprisonment after rejecting a plea deal for ten. 628 N.E.2d at 458, 460. The appellate court reversed the defendant's conviction for other reasons, but it noted that if the defendant were convicted again, it would be an abuse of the trial court's discretion to sentence him more harshly in order to punish him for going to trial. 628 N.E.2d at 464. To support that conclusion, the opinion includes a lengthy block quote from *United States v. Stockwell*, 472 F.2d 1186 (9th Cir. 1973), which explains that the United States Constitution prohibits vindictive sentences. *See id*. at 1187 ("If there was such a use of the sentencing power, the constitutional right to trial would be impaired.").

That was enough to notify the state appellate court that Williford was asserting a violation of the federal Constitution. As noted, four factors govern whether a state prisoner fairly presented a federal claim to a state court: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation."

*Ellsworth*, 248 F.3d at 639. Of those four factors, the last three weigh in favor of a finding of fair presentment. Williford relied on *Scott*, a state case applying a federal constitutional analysis to a very similar set of facts—a thirty-year sentence after a ten-year offer in *Scott* versus a twenty-five-year sentence after a ten-year offer here. Williford framed the claim in a way that called to mind a specific constitutional right; in fact, he cited the Sixth Amendment "book and verse," which is more than he had to do. *Perruquet*, 390 F.3d at 519 ("A petitioner fairly presents his federal claim to the state courts when he articulates both the operative facts and the controlling legal principles on which his claim is based. He need not cite book and verse on the federal constitution. But he must, in some manner, alert the state courts to the federal underpinnings of his claim.") (internal citations, alterations, and quotation marks omitted) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). And vindictive sentencing claims are within the mainstream of constitutional litigation, as several federal appeals courts have held that the Constitution prohibits sentencing defendants more harshly in order to punish them for going to trial. *See United States v. Susi*, 674 F.3d 278, 286 (4th Cir. 2012) ("A defendant's right to due process requires that there be no vindictiveness against him for having chosen to exercise his constitutional rights …. As applied to Susi's case, this due process protection extends not only to his exercise of the right to appeal, but also the right to go to trial.") (internal quotation marks omitted); *Correia v. Hall*, 364 F.3d 385, 388 (1st Cir. 2004); *Waring v. Delo*, 7 F.3d 753 (8th Cir. 1993) ("A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal."); *Stockwell*, 472 F.2d at 1187-88. The first factor weighs in favor of a finding of procedural default, as Williford's appellate briefs cite no federal cases; still, a petitioner does not *need* to cite federal cases to fairly present a federal claim—especially where, as here, the

petitioner cites the relevant federal constitutional provision itself. *See Verdin*, 972 F.2d at 1475-76, 1480. On balance, then, Williford fairly presented a Sixth Amendment vindictive sentencing claim on direct appeal to the state appellate court.

Williford's *pro se* supplemental PLA fairly presented a vindictive sentencing claim as well. In the section entitled "Points Relied upon for Reversal," the supplemental PLA argued:

> [T]he other defendants have a long history criminal record with violence. My record is minimal 1 class A felony and non-violent. … Under these circumstances it is improper and disp[roportion]ate to punish me for ex[ercis]ing my consti[tu]tional right to demand trial by imposing a sentence 2 ½ times that of these sophi[sti]cated career criminals.

Doc. 13-6 at 5. Later, in the "Statement of Facts," Williford wrote:

> Given 25 years x 2 + 5 years agg battery while the men who committed this crime got 10 years (and [are] now at home). After demanding trial I was offer[ed] a 10 year plea but since I … exercise[d] my constitutional rights and [went] to trial, I was punish[ed] unreasonably! While my 2 co-defendants have severe criminal background[s], I had 1 class A ….

*Id*. at 6. Then, in the "Argument" section, Williford cited *Stockwell* and wrote:

> Another argument I would like to present is why, my co-defendants with terrible background[s] w[ere] given less than me 2 ½ less for pleading guilty to the crime they committed but since I was a driver unaware of th[eir] action exercise my consti[tu]tional rights and demand trial, I get punish[ed] more harshly than they did.

*Id*. at 7. That is good enough to present a federal vindictive sentencing claim. Williford explained the claim's factual basis (he received a sentence two and a half times longer than the one he was offered in a plea deal, and two and a half times longer than the ones his more culpable co-defendants received, as a punishment for going to trial), and he cited a federal opinion (*Stockwell*) to provide a legal framework. *See Bocian*, 101 F.3d at 470 (finding fair presentment where the petitioner cited a United States Supreme Court case to support a constitutional proposition and cited Illinois cases relying on Supreme Court cases for federal

constitutional analysis). The court must therefore address Williford's Sixth Amendment sentencing claim on the merits.

As for the procedurally defaulted claims: A habeas petitioner may overcome a procedural default either by demonstrating cause for the default and actual prejudice, or by showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) (citations and internal quotation marks omitted). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him'" in light of some new evidence. *Smith*, 598 F.3d at 387-88 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Williford "has not even alleged that he meets the requirements" for the cause and prejudice exception, and so he has forfeited any such argument. *Anderson*, 471 F.3d at 815 ("Anderson has procedurally defaulted, and because he has not even alleged that he meets the requirements for these exceptions, we will not reach the merits of his claims.").

That leaves the miscarriage of justice exception. Williford insists that he is innocent. Doc. 6 at 6. His habeas petition offers no argument that he is innocent, but in other pleadings Williford has asserted the following. On the day of the robbery, his friend, Anthony "Mookie"

Clay, persuaded Williford to drive him to the North Side of Chicago to pick up money from his girlfriend. Doc. 13-17 at 6. They came upon Ardister and Brochs, whom Clay knew but Williford did not. *Ibid*. They asked Williford for a ride, too, and Williford agreed. *Ibid*. Later, Williford parked, while Clay, Ardister, and Brocks got out of the car and committed the robbery. *Ibid*. Williford did not know what the other men were doing; he fled the police because he had some drugs on him and because he was "under the influence of drugs and alcohol." *Ibid*; Doc. 13-6 at 6. Clay was the man who jumped from the car during the chase; he was never captured or charged in connection with the robbery. Doc. 13-17 at 6.

To support his account, Williford attaches a letter that he received in 2013 from his public defender, Denise Avant. Doc. 6 at 32-33. Avant wrote that her investigator had found Clay (whom she calls "Anthony Clayton") in Cook County Jail on unrelated charges, stating:

> Myself, the investigator, and my supervisor, Harold Winston went back to the lockup and talked with Mr. Clayton. Mr. Clayton told us that the two of you were together that afternoon in the park, when two men, whom he knew, but you did not know approached. They told Mr. Clayton that they needed to go pick up some money. Mr. Clayton said you drove them up north. He said that they got out of the car, and you remained in the car. After the incident, you drove off, and he jumped from the car before the police had an opportunity to stop your car.

Doc. 6 at 32. Avant then reported that she had prepared an affidavit for Clay to sign, but when she gave it to him, he retracted his statement and insisted that Williford "did know what was going on." *Ibid*.

Williford does not satisfy the miscarriage of justice exception to procedural default. The court's function in determining whether the exception applies "is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors," and in making that assessment, the court must "consider all the evidence, both old and new, incriminating and exculpatory, without regard to whether it would

necessarily be admitted at trial." *Blackmon v. Williams*, 823 F.3d 1088, 1101 (7th Cir. 2016) (internal quotation marks omitted). Even considering Avant's letter, though, the record strongly indicates that Williford is guilty. Williford's story is that three men participated in the robbery while he sat in the car; but Popp and Hurst both testified that *four* men attacked them, and Costanzo testified that he saw four men running to the SUV after the robbery. Doc. 13-22 at 18, 55, 84-85. Williford's story is that he did not know that his passengers were about to commit a robbery; but an Assistant State's Attorney testified that Williford admitted to her that he had agreed to commit a robbery. *Id*. at 151-52. And Nemickas testified that he found Hurst's keys in Williford's pocket when he arrested him, and Hurst testified that the keys that the police found were his. *Id*. at 75, 130. Williford's account, then, would require a jury either to find that Nemickas or Hurst lied or to accept the implausible account that one of Ardister, Brochs, or Clay hit a stranger in the neck with a lead pipe, took his keys, ran back to the waiting getaway car, but then—before fleeing the marked police car that had pulled up on the street nearby and while a woman was screaming for help—took the time to hand the keys to Williford, who in turn took the time to put them in his pocket. On the other side of the scales, Williford has his own assertions that he is innocent (but not his testimony, as he never testified at his trial, *id*. at 173) and a retracted statement from Williford's friend by way of his lawyer that contradicts Williford's own statements to the Assistant State's Attorney. It is not "more likely than not that no reasonable juror would have convicted" Williford in light of Clay's statement. *Schlup*, 513 U.S. at 327. In fact, the closer question is whether any reasonable juror could have *acquitted* him.

Accordingly, the miscarriage of justice exception does not apply, and the court will not consider any of Williford's procedurally defaulted claims on the merits.

## III. Claims Considered on the Merits

Remaining are Williford's third claim (that he is actually innocent) and part of his sixth claim (that he was sentenced more harshly as punishment for going to trial, in violation of the Sixth Amendment). Both fail on the merits. It is not right to say, as the Chief of Parole does, that a freestanding actual innocence claim can never succeed on federal habeas review. Doc. 12 at 12. In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court left open the possibility that a "truly persuasive demonstration of actual innocence" would support the issuance of a writ, at least in a capital case. *Id.* at 417, 427; *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Gomez v. Jaimet*, 350 F.3d 673, 679 n.1 (7th Cir. 2003) ("[A] majority of justices agree that habeas relief would be warranted upon a truly persuasive showing of actual innocence, at least in a capital case."). Still, even if pure innocence claims can succeed in principle, a petitioner making such a claim must "necessarily" make an "extraordinarily high" threshold showing of innocence. *Herrera*, 506 U.S. at 417. As explained, Williford has not even met the lower threshold for showing that he is actually innocent for the purpose of excusing a procedural default; it follows that he cannot possibly make the greater showing required for a freestanding actual innocence claim under *Herrera*. *See Schlup*, 513 U.S. at 315-16 (explaining that, when "a claim of innocence is … not itself a constitutional claim, but instead a gateway through which a habeas petitioner [attempts to] pass to have his otherwise barred constitutional claim considered on the merits," the petitioner's "evidence of innocence need carry less of a burden") (internal quotation marks omitted).

The Chief of Parole's only argument that Williford's sentencing claim fails on the merits comes in a footnote. He writes that "petitioner's claim that his sentence is disproportionate to his

codefendants is non-cognizable," citing *Williams v. Illinois*, 399 U.S. 235 (1970), and *Dellinger v. Bowen*, 301 F.3d 758 (7th Cir. 2002). Doc. 12 at 10 n.3. That argument misses the point. *Williams* holds that the "Constitution permits qualitative differences in meting out punishment," and that "there is no requirement that two persons convicted of the same offense receive identical sentences," 399 U.S. at 243, and *Dellinger* holds the same, 301 F.3d at 767-68. As discussed, though, Williford's argument (most charitably read) is not that it is unconstitutional to sentence similarly situated co-defendants differently, but rather that it is unconstitutional to sentence a defendant more harshly in order to punish him for pushing through to trial.

That said, Williford's Sixth Amendment sentencing claim still fails for lack of evidence. The trial judge appears to have had a hand in Williford's plea offer. Doc. 13-23 at 7-8 (according to the prosecutor, Williford "was given an opportunity to take responsibility for this instance and *was offered by this court* ten years in the Illinois Department of Corrections on a plea of guilty and he did not take responsibility during that 402 conference") (emphasis added). According to the Ninth Circuit, that creates a *presumption* that Williford's later, harsher sentence was vindictive. *See Stockwell*, 472 F.2d at 1187-88; *cf. Correia*, 364 F.3d at 388 (the First Circuit, explaining that the presumption of vindictiveness "arises only in circumstances in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness") (internal quotation marks omitted and emphasis removed).

But even assuming that such a presumption applies in the Seventh Circuit, the record amply rebuts it. Indeed, during sentencing, the judge explicitly rejected the prosecutor's suggestion to take into account Williford's decision to go to trial. Doc. 13-23 at 8 ("I'm not considering that at all…. I don't even want a reference to that."). And the judge explained

Williford's harsh sentence in rational terms, noting that Williford drove the getaway car and led the police on a high-speed chase in a residential area:

> And then engaging in something out of the Bullet or the French Connection. High speed chase over I don't know, 20, 30 blocks of the City of Chicago with police cars in pursuit. People flying out of your vehicle, diving out of the vehicle as it's moving through the streets resulting in you ultimately crashing the vehicle. I can't remember what the speed estimate was, but I think it was 80 miles an hour or something like that down Western Avenue. Causing near danger to countless people during that high speed chase.

Doc. 13-23 at 15. The judge also took into account the crime's violent nature, saying: "Miraculously [Hurst's] head wasn't crushed in when he was hit over the back of the head with a pipe." *Ibid*. These facts explain Williford's sentence far more plausibly than does an unsupported assertion of vindictiveness. *See Correia*, 364 F.3d at 387, 390-91 (rejecting a vindictive sentencing claim, albeit under the deferential standard of 28 U.S.C. § 2254(d)(1), in part because the prosecutor adduced evidence at trial that the defendant led the police on a dangerous chase through downtown Boston before being apprehended for car theft).

There is scant other evidence to support a conclusion that Williford's sentence was vindictive. It is true that the sentence was two and a half times longer than it would have been had he pleaded guilty, but "[i]f defendants could demand the same sentence after standing trial that was offered in exchange for a guilty plea, all incentives to plead guilty would disappear." *United States v. Carter*, 804 F.2d 508, 513 (9th Cir. 1986); *see also United States v. Hare*, 269 F.3d 859, 861 (7th Cir. 2001) ("[D]efendants are free to waive their rights, to exchange them for other things that they value more highly. They exchange jury trials for lower sentences …."). Indeed, the federal sentencing guidelines offer a two-level reduction for defendants who "accept[] … responsibility" for their crimes in part by forgoing trial, *see* U.S.S.G. § 3E1.1(a), plus an additional level for a timely guilty plea, *see* U.S.S.G. § 3E1.1(b), and that practice is constitutional. *See United States v. Salvador*, 18 F.3d 1380, 1382 (7th Cir. 1994); *Ebbole v.*

*United States*, 8 F.3d 530, 535-37 (7th Cir. 1993); *United States v. Tolson*, 988 F.2d 1494, 1498-99 (7th Cir. 1993); *United States v. Saunders*, 973 F.2d 1354, 1362 (7th Cir. 1992). For similar reasons, while a sentence is sometimes presumed vindictive if it is imposed after a successful appeal and is higher than the sentence imposed before the appeal, *see North Carolina v. Pearce*, 395 U.S. 711, 726 (1969), the Supreme Court has held that the presumption does not apply if the first sentence was imposed after a guilty plea but the second sentence was imposed after a trial, *see Alabama v. Smith*, 490 U.S. 794 (1989). A higher sentence after a trial is only natural, given that "in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged" and that "the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id*. at 801.

It is doubtful that an evidentiary hearing could turn up evidence that the sentencing judge's motives were impure. But the point is moot, as Williford has not asked for an evidentiary hearing, Docs. 6, 18, and the court will not hold a hearing that neither party has requested. *See Stewart v. Peters*, 958 F.2d 1379, 1386 (7th Cir. 1992) ("Nor does Stewart ask for an evidentiary hearing in order to explore, by means of testimony from Stewart and his trial counsel, what exactly Stewart was told."); *Branion v. Gramly*, 855 F.2d 1256, 1267 (7th Cir. 1988) ("Branion did not request an evidentiary hearing"). On this record, Williford's Sixth Amendment sentencing claim fails on the merits.

## Conclusion

For the forgoing reasons, Williford's federal habeas petition is denied. Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Regarding the procedurally defaulted claims, the applicable standard is:

> When the district court denies a habeas petition on procedural grounds
> without reaching the prisoner's underlying constitutional claim, a COA should
> issue when the prisoner shows, at least, that jurists of reason would find it
> debatable whether the petition states a valid claim of the denial of a
> constitutional right and that jurists of reason would find it debatable whether
> the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Anderson v. Litscher*, 281 F.3d 672, 673-74 (7th Cir. 2002). Regarding the claims decided on the merits, the applicable standard is:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial
> showing of the denial of a constitutional right, a demonstration that …
> includes showing that reasonable jurists could debate whether (or, for that
> matter, agree that) the petition should have been resolved in a different
> manner or that the issues presented were adequate to deserve encouragement
> to proceed further.

*Slack*, 529 U.S. at 483-84 (internal quotation marks omitted); *see also Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014); *Lavin*, 641 F.3d at 832.

This court's denial of Williford's federal habeas claims relies on settled precedents and principles. The application of those precedents and principles to Williford's petition does not present difficult or close questions, and so the petition does not meet the applicable standard for granting a certificate of appealability. The court therefore denies a certificate of appealability.

September 14, 2016

_____
United States District Judge

29